## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

JOHNNY LEE WHITWORTH,      )
                          )
              Petitioner,  )
                          )
     vs.                   )      **Case No. CIV-08-1152-M**
                          )
DAVID MILLER,              )
                          )
              Respondent.  )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action seeking a writ of habeas

corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the undersigned

Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C).

Respondent has filed a response to the petition [Doc. No. 12], the state court transcripts

("Tr.") and the original record ("O.R."). Petitioner has neither filed a reply nor sought an

extension of time in which to do so. The case is at issue. For the reasons set forth herein, it

is recommended that the petition be denied.

I.     Background

Petitioner was charged by information with first degree murder (malice aforethought)

in the District Court of Oklahoma County, Case No. CF-2004-3224. O.R., p. 1. At trial,

Petitioner did not dispute the State's contention that he shot and killed his nephew, George

("Scooter") Fritz. Rather, he claimed he acted in self-defense. The jury found Petitioner

guilty of the lesser included offense of first degree manslaughter and recommended a

sentence of one hundred years of imprisonment. O.R., p. 147. Petitioner was sentenced in accordance with the jury's recommendation. O.R., pp. 162-63. Petitioner sought and was granted permission to file an appeal out of time. O.R., pp. 171-74, 182-83. Petitioner filed a direct appeal, and the Oklahoma Court of Criminal Appeals ("OCCA") affirmed the conviction but modified Petitioner's sentence to fifty years imprisonment. Response, Ex. 3 (OCCA Summary Opinion). Other than seeking an appeal out of time, Petitioner filed no other applications for post-conviction relief. Petition, p. 3.

II.    Petitioner's Claims

Petitioner raises the four claims he raised on direct appeal. In Ground One, Petitioner alleges that the jury instructions regarding self defense were incomplete. In Ground Two, Petitioner alleges that the evidence was insufficient to disprove his defense of self-defense. In Ground Three, Petitioner alleges that he was denied a fair trial because the trial refused to instruct the jury on Oklahoma's 85% Rule, i.e., that Petitioner would serve 85% of his sentence before becoming eligible for parole. As his final claim, Petitioner contends that his sentence, even as modified by the OCCA on direct appeal, is excessive and in violation of the Eighth Amendment.

Respondent contends that Petitioner is not entitled to habeas relief on Grounds One and Two because he has failed to show that the decision of the OCCA with respect to each claim was contrary to or an unreasonable application of clearly established federal law. Respondent further contends that the claims in Grounds Three and Four involve issues of

state law and are therefore not cognizable in a federal habeas proceeding.

III.   Standard Governing Habeas Corpus Review

When a petitioner's claims have been adjudicated on the merits in state court, a federal

court may grant habeas corpus relief only if the petitioner establishes that the state court

decision "was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States,"or "was based on an

unreasonable determination of the facts in light of evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d)(1), (2). Under this standard, judicial review is directed

to the result of the state appellate court's decision, not its reasoning. *See Gipson v. Jordan*,

376 F.3d 1193, 1197 (10th Cir. 2004) ("[W]e defer to the [state court's] decision unless we

conclude that its result - not its rationale - is 'legally or factually unreasonable.'") (quoting

*Aycox v. Lytle*, 196 F.3d 1174 (10th Cir. 1999)).

A state court decision is "contrary to" clearly established federal law for purposes of

§ 2254 if "the state court applies a rule that contradicts the governing law set forth in

[Supreme Court] cases" or if "the state court confronts a set of facts that are materially

indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result

different from" the result reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362,

405-406 (2000). A state court decision involves an "unreasonable application" of federal law

if "the state court identifies the correct governing legal principle from [Supreme Court]

decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at

413. "AEDPA's conception of objective unreasonableness lies 'somewhere between clearly erroneous and unreasonable to all reasonable jurists.'" *House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008) (quoting *Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006)), *cert. denied*, 129 S.Ct. 1345 (2009). "Thus, 'only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254.'" *Id.* (quoting *Maynard*, 468 F.3d at 671)). In conducting this deferential inquiry, the Court presumes that the state court factual findings are correct, and the burden of rebutting this presumption by clear and convincing evidence is placed on the petitioner. *See* 28 U.S.C. § 2254(e)(1); *Smith v. Mullin*, 379 F.3d 919, 924-25 (10th Cir. 2004).

IV.     Analysis

A.     Self-Defense Jury Instruction - Ground One

Petitioner alleges, as he did on direct appeal, that, although based on an Oklahoma uniform jury instruction and "an accurate statement of the law[,]" Instruction No. 9 regarding self-defense was incomplete because the instruction did not make it clear to the jury that self-defense was a defense to the crime of first degree manslaughter for which he was convicted as well as to the crime of murder in the first degree. Petition, p. 5. The challenged introductory instruction on self-defense instructed: "Evidence has been introduced of self-defense as a defense to the charge that the defendant has committed the crime [of] murder in the first degree malice aforethought." O.R., p, 118 (Instruction No. 9).[1] Petitioner did not

_____

[1]In addition to the challenged instruction on self-defense, the trial court gave the jury the
(continued...)

4

object to this instruction, nor does he assert that he offered an instruction which would have

---

[1](...continued)

following additional instructions regarding self-defense from the Oklahoma Uniform Jury Instructions, Criminal ("OUJI CR"):

No. 10: A person is justified in using deadly force in self-defense if that person reasonably believed that use of deadly force was necessary to protect himself from imminent danger of death or great bodily harm. Self-defense is a defense although the danger to life or personal security may not have been real, if a reasonable person, in the circumstances and from the viewpoint of the defendant, would reasonably have believed that he/she was in imminent danger of death or great bodily harm. OUJI-CR 8-46

No. 11: It is the burden of the State to prove beyond a reasonable doubt that the defendant was not acting in self-defense. If you find that the State has failed to sustain that burden, then the defendant must be found not guilty. OUJI-CR 8-49

No. 12: Self-defense is permitted a person solely because of necessity. Self-defense is not available to a person who was the aggressor or provoked another with the intent to cause the altercation or voluntarily entered into mutual combat, no matter how great the danger to personal security became during the altercation unless the right of self-defense is reestablished. OUJI CR 8-50

No. 13: A person who was the original aggressor or provoked another with intent to cause the altercation or voluntarily entered into mutual combat may regain the right to self-defense if that person withdrew or attempted to withdraw from the altercation and communicated his desire to withdraw to the other participant in the altercation. If, thereafter, the other participant continued the altercation, the other participant became the aggressor and the person who was the original aggressor or provoked another with the intent to cause the altercation or voluntarily entered into mutual combat is entitled to the defense of self-defense. OUJI CR 8-51

No. 14: A person who was not the aggressor or did not provoke another with intent to cause an altercation or did not voluntarily enter into mutual combat has no duty to retreat, but may stand firm and use the right of self-defense. OUJI CR 8-52

No. 15: A person is an aggressor when that person by his wrongful acts provokes, brings about, or continues an altercation. The use of words alone cannot make a person an aggressor. OUJI CR 8-53

O.R., pp. 121-24. Petitioner does not challenge these instructions.

cured the alleged flaw. Tr., p. 336.

On direct appeal, the State argued that the instructions as a whole explained that self-defense would negate a guilty verdict for first degree manslaughter, that is, the two were mutually exclusive. Response, Ex. 2, pp. 5-6. The State argued that as to the second element of manslaughter – that the death was "unlawful," defined as "without legal justification" – a jury of average intelligence and common sense would understand that "one is not committing an unlawful act when he or she is legitimately defending themselves from imminent bodily harm or death." *Id.*, p. 6. The OCCA agreed with the State and rejected Petitioner's claim, finding that under Oklahoma law, the instructions "fairly and accurately stated the applicable law and informed the jury of the crime charged and Whitworth's defenses of self defense and voluntary intoxication."[2] Response, Ex. 3, p. 2.

When attacking a state court judgment based on an erroneous jury instruction, a federal habeas petitioner has a "great burden." *Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995). The burden is especially onerous in the instant case because Petitioner is challenging as "incomplete" an instruction which he admits is an accurate statement of the law. *See Tyler v. Nelson*, 163 F.3d 1222, 1227 (10th Cir. 1999). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). And, as noted by the Supreme Court in *Henderson*, "[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no

---

[2]The trial court also issued jury instructions on the defense of voluntary intoxication. O.R., pp. 126-130 (Instruction Nos. 17-21)

objection has been made in the trial court." *Id.* at 154 ("Orderly procedure requires that the respective adversaries' views as to how the jury should be instructed be presented to the trial judge in time to enable him to deliver an accurate charge and to minimize the risk of committing reversible error."). Generally, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings "unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (citations omitted). Thus, even if the challenged instruction had been erroneous under state law, such error would not necessarily entitle Petitioner to federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).

Applying this highly deferential standard of review, the undersigned finds that Petitioner has failed to show that the instructions given to the jury violated his right to due process so as to render his trial fundamentally unfair. No clearly established United States Supreme Court precedent holds that the right to present a defense includes the right to a specific jury instruction beyond a general affirmative defense. *See e.g., Newton v. Million*, 349 F.3d 873, 879 (6th Cir. 2003) (finding no error of constitutional dimension where petitioner's claim was based not on trial court's failure to give a self-defense instruction but rather on the specific content of the instruction, and noting the absence of any "Supreme Court case which holds that a criminal defendant's right to present a defense includes the right to a specific jury instruction, particularly one that goes beyond a general affirmative defense."). In *Gilmore v. Taylor*, 508 U.S. 333, 343 (1993), the Supreme Court

7

acknowledged that "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense" but rejected petitioner's arguments that "the right to present a defense includes the right to have the jury consider it, and that confusing instructions on state law which prevent a jury from considering an affirmative defense therefore violate due process." *Id.* (quotations and citations omitted). According to the Court, such an "expansive reading" of Supreme Court precedent and would "make a nullity of the rule reaffirmed in *Estelle v. McGuire* ... that instructional errors of state law generally may not form the basis for federal habeas relief." *Id.* at 344. *See also Kaiser v. Nelson*, No. 00-3016, 2000 WL 1125608, at *6 (10th Cir. Aug. 9, 2000) (relying on *Gilmore* to find that a habeas petitioner's right to present a defense did not include the right to an instruction on the defense of withdrawal).

Petitioner was likewise not prevented from presenting evidence in support of his claim of self-defense, nor was he precluded from arguing to the jury the application of self-defense to the charge of manslaughter.[3] The jury was instructed that no one can be convicted of manslaughter in the first degree unless the State proves beyond a reasonable doubt the elements of that crime, including that the death was "unlawful." *See* O.R., p. 131 (Instruction No. 22); *see also*, O.R., p. 129 (Instruction No. 20). Several instructions were given regarding self-defense, *see supra* note 1, including the instruction on justifiable use of deadly force (Instruction No. 10) which specifically explained justifiable conduct that would

---

[1]As discussed in connection with Ground Two, *infra*, the only evidence at trial that Petitioner acted in self-defense was the testimony of Petitioner, which was inconsistent at best.

8

negate the "unlawful" element of manslaughter. O.R., p. 119. Further, the jury was instructed that the State was required to prove beyond a reasonable doubt that "[Petitioner] was not acting in self-defense" and that if the "State has failed to sustain that burden, then the [Petitioner] must be found not guilty. O.R., p. 120, 129 (Instruction Nos. 11, 20). Finally, as discussed below in connection with Ground Two, there was substantial evidence supporting the jury's finding that Petitioner committed the crime of first degree manslaughter.

Therefore, the undersigned finds Petitioner has failed to show that the challenged jury instruction relating to self defense deprived him of a fair trial. Accordingly, the OCCA's decision in this regard was neither contrary to, nor or an unreasonable application of clearly established federal law as determined by the Supreme Court. Petitioner is not entitled to habeas relief concerning his claim of improper jury instruction.

B.   Sufficiency of the Evidence - Ground Two

At trial Petitioner admitted shooting his nephew but claimed his actions were in self-defense because Scooter was "coming at him." Petition, p. 9. In his second ground for relief, Petitioner contends that the evidence presented at his trial was insufficient to prove that he "was not acting in self-defense when he shot a [larger], younger man, who advanced on him aggressively while in the Petitioner's home." Petition, pp. 8-13. Petitioner points to evidence presented at the trial which he believes supported his claim of self-defense. *Id.*

Judicial review of Petitioner's habeas challenge to the sufficiency of the evidence

9

presented at trial "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). On federal habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* In applying this standard, the Court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" *Messer v. Roberts*, 74 F. 3d 1009, 1013 (10th Cir. 1996) (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)). Both direct and circumstantial evidence is considered in determining whether evidence is sufficient to support a conviction. *Lucero v. Kerby*, 133 F.3d 1299, 1312 (10th Cir. 1998).

The sufficiency of the evidence inquiry is based on Oklahoma law which defines the substantive elements of the crime. *Jackson*, 443 U.S. at 309, 324 n.16. The OCCA has held first degree manslaughter, Okla. Stat. tit. 21, § 711, may be committed in two ways: 1) when perpetrated without a design to effect death and in a heat of passion but in a cruel and unusual manner or 2) when perpetrated without a design to effect death by means of a

10

dangerous weapon.[4] *Camron v. State*, 829 P.2d 47, 51 (Okla. Crim. App. 1992). Under

Oklahoma law, justifiable homicide in self-defense occurs "when one person, not at fault in

bringing on the struggle, kills another under apparent necessity to save himself from death

or great bodily harm." *Id. See also* Okla. Stat. tit. 21, § 733. Because Petitioner raised the

issue of self-defense at his trial, the prosecution had the burden of proving beyond a

reasonable doubt that Petitioner was not acting in self-defense. *Bechtel v. State*, 804 P.2d 1,

14 (Okla. Crim. App. 1992); *Perez v. State*, 798 P.2d 639, 641 (Okla. Crim. App. 1990).

"Self-defense is an affirmative defense which admits the elements of the charge, but offers

a legal justification for conduct which would otherwise be criminal." *McHam v. State*, 126

P.3d 662, 667 (Okla. Crim. App. 2005). As reflected in the jury instructions discussed *supra*,

the use of deadly force is justifiable only if the individual being threatened reasonably

believed that the use of deadly force was necessary to protect himself or herself from

imminent danger of death or great bodily harm. *Chapple v. State*, 866 P.2d 1213, 1215

(Okla. Crim. App. 1993) (approving jury instruction as proper statement of the law in

Oklahoma).

Petitioner argued in his direct appeal brief that the State failed to prove that the killing

was not justifiable homicide because Petitioner "was threatened with bodily harm, in his own

---

[4]As stated previously, the jury was instructed that the offense of first degree manslaughter required the State to prove: (1) the death of a human; (2) the death was unlawful; (3) the death was caused by the defendant; and (4) the death was caused without malice aforethought. *See* O.R., p. 131 (Instruction No. 22).

home, by a stronger, younger man, who was advancing towards him while threatening him . . . ." Response, Ex. 1, p. 12. The OCCA rejected Petitioner's justifiable homicide theory and held that "[t]he evidence was sufficient for a rational jury to find that the State disproved Whitworth's defense of self-defense beyond a reasonable doubt." Response, Ex. 3, p. 2. The OCCA explained that "[t]he jury was free to disbelieve Whitworth's account and find that Whitworth's inconsistent statements during his interview and at trial coupled with his efforts to conceal the shooting disproved his claim of self-defense." *Id.* Because the OCCA applied the *Jackson* standard in deciding Petitioner's sufficiency of the evidence claims on direct appeal,[5] this Court's review is limited by the AEDPA to inquiring whether the OCCA's application of *Jackson* was unreasonable. *See Brown v. Sirmons*, 515 F.3d 1072, 1089 (10th Cir. 2008).

Having reviewed the record and the arguments and authorities relied on by the parties, the undersigned finds that the evidence presented at trial, viewed in the light most favorable to the prosecution, was sufficient to support the jury's guilty verdict of first degree manslaughter. Anthony ("Tony") Adams, Petitioner's nephew, testified that Petitioner called him on June 1, 2004, and told him to come to Petitioner's home and pick up Scooter, Tony's

---

[5] The OCCA cited its previous decision in *Coddington v. State*, 142 P.3d 437, 455 (Okla. Crim. App. 2007), wherein the court applied the standard set out in *Spuehler v. State*, 709 P.2d 202 (Okla. Crim. App. 1985), *i.e.*, the *Jackson* standard, for reviewing claims of insufficient evidence to support convictions. Response, Ex. 3, p. 2.

12

cousin, "or I'm going to kill him." Tr., p. 75.[6] Tony drove to Petitioner's home in Valley Brook, but before he could come inside, Petitioner met him in the yard, appearing as if he had just showered, and said Scooter wasn't there but had gone up the street to a friend's house. Tr., p. 80. Tony became suspicious when he didn't see Scooter as he usually did, and he visited Petitioner's home several times over the next few days, on one occasion noticing two packs of Scooter's brand of cigarettes that he typically "chain smoked" and also observing in Petitioner's back yard a rectangular patch of fresh dirt and a small shovel nearby. Tr., pp. 80-94. Tony and his wife visited Petitioner's home after Scooter had been missing several days and when Tony tried to access a back bedroom, he found that the door was duct-taped shut, a towel was at the threshold of the door, and a box window fan was in the bedroom window blowing air out of the room. Tr., pp. 102-03. Tony testified that Petitioner stated that he had a safe in the room, but Tony became more suspicious and began cutting through the duct tape and kicking at the door, which he found to be nailed shut. Tr., pp. 104-05, 108. Finally, Tony kicked the door partially open, and he was met with a "bad smell." Tr., p. 109. Before Tony could kick again, he heard the slide of a gun hammer and returned to the living room with his knife in hand and found Petitioner pointing a gun toward Tony's wife. Tr., pp. 109-10. Tony and his wife left, and Tony called a Valley Brook police officer. Tr., pp. 111, 200.

Police officers executed a search warrant on Petitioner's home the morning of June

---

[6]Tony testified that because Petitioner was disabled and had lost his drivers license, Scooter would sometimes transport his uncle. Tr., pp. 72-74.

6, 2004, Tr., p. 144, and when the officers entered the home, Petitioner, who was sitting near two guns, stated "I was going to give myself up." Tr., pp. 194-95. Officers found the badly decomposed body of George Fritz in the bedroom Tony had tried to enter, a sink full of beer cans, and a freshly dug four foot by three foot rectangular area in the backyard and a folding shovel and measuring tape nearby. Tr., pp. 145-47, 164. Officers found numerous weapons throughout the home, many of which were loaded. Tr., pp. 168-70, 183-87. As Officer Charlie Toy placed Petitioner in a police vehicle, Petitioner, who knew Toy, spontaneously stated "Charlie, I'm sorry" and made no reference to self-defense. Tr., pp. 199, 205, 218-19; 145. The medical examiner testified that Scooter had been killed by a single .22 caliber bullet wound in the left chest. Tr., pp. 174, 237-39.

The State presented other evidence that contradicted Petitioner's claim that he shot Scooter in self-defense. During his testimony, Tony Adams testified that approximately two months before the shooting Petitioner struck Scooter with his cane in an argument over beer and pointed a gun at both Scooter and Tony. Tr., pp. 116-17.[7] Jeremy Kotel, a former

---

[7]Tony testified:

And Johnney had said something about stay out of my beer, got in a little altercation with him [Scooter]. Johnney came over and hit my cousin in the back with a can, with his cane, smacked him in the back. Scooter went to stand up and he was just like, why did you hit me for? I didn't do anything to you. And Johnney went back up into the house. Scooter took his beer, threw it down, went to go get another beer, and then I just heard them two arguing back and forth. Right as I walk into the house, my uncle's got the - - it was the 22 revolver pointed at Scooter's chest and I went and pushed my cousin aside and stepped up in front of him and then my uncle pointed the gun at me and said "get the fuck out of my face or I'll kill you, too."

(continued...)

14

neighbor of Petitioner's, testified that in June 2004, he inquired about a small revolver stuck into Petitioner's waistband, and Petitioner told him "it was to keep people in line" and that he was "pretty much the neighborhood security." Tr., pp. 51, 54. Dusty VanSchuyver, a neighbor, testified that he was in Petitioner's home the day before Scooter was killed and that Petitioner and Scooter were drinking and began arguing. Tr., pp. 60-61. VanSchuyver testified that Scooter stood up and that Petitioner pulled a revolver out of his pants and shot into the floor at Scooter's feet, stating that Scooter, who was unarmed, should "start listening." Tr., pp. 57, 61, 62, 66-67.

Petitioner, who was 57 years old and disabled, testified that on June 1, 2004, Scooter, with whom he had a good relationship, drove him to do some errands, and after returning to Petitioner's home both of the men began drinking beer, and Scooter also smoked some marijuana. Tr., pp. 286, 289, 292-95. Petitioner stated that the two men drank two cases of beer (48 cans) that day. Tr., p. 296. Petitioner testified he went to the bathroom and that when he returned Scooter had one of Petitioner's rifles, pointing it out toward the street, and Petitioner became angry and took it away from him. Tr., pp. 297-98. According to Petitioner, Scooter became angry and although he calmed down, he became angry again as he drank and smoked more. Tr., pp. 298-99. Petitioner testified that the two men slept and upon waking on June 2, they were sitting in chairs and drinking again when Scooter suddenly "just flipped," "jumped up at me," "saying he was going to kick my ass . . . ." Tr.,

---

[7](...continued)
Tr., pp. 116-17.

15

pp. 300-01. Petitioner testified that he "already had [his] hand on [his] gun," and he pulled the gun and "it went off and it hit [Scooter]. Tr., p. 301.[8] Petitioner testified that he "went over and said, Scooter, you know, you'll listen next time . . . ." *Id.* According to Petitioner, "it all happened so fast" and, "[h]e just didn't get up." Tr., p. 302. Petitioner testified that he drank all night while looking at Scooter; the next day he moved Scooter's body into the bedroom and put screws in the door and tape around it. Tr., pp. 302-03. He also explained that he had started scraping a hole in the back yard to bury Scooter, who "was like a son" to him. Tr., p. 304.

On cross-examination, Petitioner admitted that he was an alcoholic and described the shooting as an "accident." Tr., pp. 310-11. However, Petitioner admitted that he had cocked the hammer back on the revolver and that he intended to pull the trigger. Tr., pp. 319-20, 327. When asked whether he should be held responsible for Scooter's death, Petitioner replied "I guess." Tr., p. 335.

Petitioner's argument regarding the sufficiency of the evidence against him amounts to a challenge to the credibility and weight to be accorded the evidence presented by the State at trial. As set forth in connection with Ground One, the jury was instructed on Petitioner's defenses of self defense and intoxication. The jury obviously did not believe Petitioner's assertion that he shot Scooter in self-defense. As previously discussed, this Court is required to accept the jury's determination regarding the credibility of witnesses and the resolution

---

[8]Petitioner later testified that he always kept a revolver under his seat cushion and that "everybody knew [he] kept it there." Tr., p. 305.

16

of conflicting evidence, as long as such resolution is within the bounds of reason. *See Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993) (on federal habeas review of sufficiency of the evidence challenge the Court "may not weigh conflicting evidence or consider the credibility of witnesses").

Viewing the evidence in the light most favorable to the prosecution, the undersigned finds that there was sufficient evidence for a rational trier of fact to resolve conflicting testimony and to find beyond a reasonable doubt that Petitioner did not act in self-defense and that he was guilty of first degree manslaughter beyond a reasonable doubt. Therefore, the OCCA's rejection of Petitioner's sufficiency of the evidence claim was neither contrary to nor an unreasonable application of *Jackson v. Virginia, supra*. Nor has Petitioner shown that the OCCA's decision was based on an unreasonable determination of the facts in light of the evidence presented at his trial. It is therefore recommended that habeas relief be denied as to the claim in Ground Two.

C.    *Anderson* Error – Ground Three

Under Oklahoma law, a person who has committed certain enumerated statutory offenses must serve 85% percent of his sentence before being eligible to be considered for parole (the "85% Rule").[9]  In Ground Three, Petitioner alleges that his due process rights

---

[9]*See* Okla. Stat. tit. 21, §§ 12.1 and 13.1 (Supp. 2000). Section 12.1 states: "A person committing a felony offense listed in [Section 13.1] on or after March 1, 2000, and convicted of the offense shall serve not less than eighty-five percent (85%) of the sentence of imprisonment imposed within the Department of Corrections." Okla. Stat. tit. 21, § 12.1 (Supp. 2000). The crime of first degree murder and the lesser included offense of first degree manslaughter are listed offenses, (continued...)

were violated because the jury was not properly instructed on sentencing and parole eligibility under the 85% Rule. Petition, p. 15. During deliberation the jury sent a question asking how much time Petitioner would actually serve, *see* Tr., pp. 386-87, and Petitioner contends that the jury's concern shows that the lack of a jury instruction on the 85% Rule resulted in a "miscarriage of justice and constituted a substantial violation of [his] constitutional and statutory rights." *Id.* Respondent contends that Petitioner has raised an issue of state law, and that it is not the province of the federal court to reexamine a State court's determination of state law. Response, p. 15.

In 2006, after Petitioner was convicted and sentenced, the OCCA held that, as a matter of Oklahoma law, jurors should be instructed on the statutory limitations on parole eligibility under Okla. Stat. tit. 21, §§ 12.1 and 13.1. *Anderson v. State*, 130 P.3d 273, 283 (Okla. Crim. App. 2006). The OCCA applied that holding in Petitioner's case and found the trial court's failure to instruct the jury regarding Petitioner's parole eligibility to be an error of state law. Response, Ex. 3, p. 3. Because of the state law error, the OCCA modified Petitioner's sentence, reducing the sentence from one hundred years imprisonment to fifty years.

Errors relating to jury instructions in a state criminal trial do not support federal habeas relief "'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997)

---

[9](...continued)

making the 85% Rule applicable to these offenses. *See* Okla. Stat. tit. 21, § 13.1(1), (3).

(citation omitted). Moreover, the Supreme Court has held that due process requires that a jury be informed about a defendant's parole ineligibility only in capital cases in which the defendant's future danger to society is an issue. *See Simmons v. South Carolina*, 512 U.S. 154, 156 (1994); *Ramdass v. Angelone*, 530 U.S. 156, 169 (2000) (*Simmons* applies only to instances where there is no possibility of parole as a legal, rather than a factual, matter). Because Petitioner was not being tried for a capital offense, he had no federal constitutional right to an instruction concerning parole eligibility. *See Gardner v. Jones*, No. 08-6211, 2009 WL 485048, at * 4 (10th Cir. Feb. 27, 2009) (unpublished op.) ("The United States Supreme Court has not held that the Constitution requires the jury to be informed of a defendant's parole eligibility in a non-capital case."); *Jones v. Mullin*, 175 Fed. Appx. 967 (10th Cir. April 11, 2006) (unpublished op.) (denying a certificate of appealability and rejecting petitioner's claim that the trial court's failure to provide a jury instruction regarding Oklahoma's parole eligibility requirements violated his due process rights).

Here, the OCCA granted relief and modified Petitioner's sentence. Petitioner has failed to show that the omission of a jury instruction concerning parole eligibility rendered his trial fundamentally unfair. Accordingly, the OCCA's decision was neither contrary to or an unreasonable application of clearly established Supreme Court law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Therefore, Petitioner is not entitled to habeas relief on Ground Three.

C.  Excessive Sentence - Ground Four

In Ground Four Petitioner essentially alleges that even his modified 50-year sentence is excessive, disproportionate to the crime and in violation of the Eighth Amendment. Petition, p. 22. Petitioner contends that because of his age (57) and because he will have to serve 85% of his sentence before becoming eligible for parole, the OCCA's imposition of the modified 50-year sentence is "excessive under the circumstances and acts to insure that Petitioner will die in prison long before he ever becomes eligible for parole or earned credits." *Id.*, p. 23.[10] Petitioner does not dispute however, that his fifty-year sentence for first degree manslaughter is within the range established by Oklahoma law. *See* Okla. Stat. tit. 21, § 715 (offense of first degree manslaughter punishable by imprisonment not less than four (4) years).

To determine whether a sentence is excessive in violation of the Eighth Amendment, this Court must determine whether the sentence is grossly disproportionate to the crime committed. *See Ewing v. California*, 538 U.S. 11, 20 (2003) ("The Eighth Amendment, which forbids cruel and unusual punishments, contains a narrow proportionality principle that applies to noncapital sentences.") (citation and internal quotations omitted). The

---

[10]Petitioner does not dispute that the OCCA's modification was both authorized under Oklahoma law and in accord with due process. *See* Okla. Stat. tit. 22, § 1066 (2006) ("The appellate court may reverse, affirm or modify the judgment or sentence appealed from, and may, if necessary or proper, order a new trial or resentencing."); *Carbray v. Champion*, 905 F.2d 314, 318 (10th Cir. 1990) ("[I]f a state appellate court has authority to exercise its own discretion and to modify a jury sentence on appeal as a matter of state law, no due process violation occurs.") (citing *Clemens v. Mississippi*, 494 U.S. 738, 746 (1990)).

proportionality principle, however, "reserves a constitutional violation for only the extraordinary case." *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003). *See also United States v. Gillespie*, 452 F.3d 1183, 1190-1191 (10th Cir. 2006) (summarizing Supreme Court precedent on the proportionality principle and noting that "the [Supreme] Court has only twice invalidated a sentence under the Eighth Amendment: once in 1910, when the defendant was sentenced to fifteen years in chains and hard labor for falsifying a public document; and most recently in 1983, when the defendant was sentenced to life without parole after committing six nonviolent felonies including writing a bad $100-dollar check") (citations omitted). In determining whether there is "gross disproportionality," the Tenth Circuit has weighed "a variety of factors, including the seriousness of the crime, the fit between the punishment and the crime, and the existence of legislative determinations of an appropriate sentence range." *Milburn v. Hines*, No. 05-7007, 2005 WL 1972604,* 2 (10th Cir. Aug. 17, 2005) (unpublished op.) (citing *Hawkins v. Hargett*, 200 F.3d 1279, 1284-85 (10th Cir. 1999)). Further, courts "are reluctant to interfere with the legislative determination of an appropriate sentence range." *Hawkins*, 200 F.3d at 1284 (citing *Rummel v. Estelle*, 445 U.S. 263 (1980)).

Petitioner's crime involving a deadly weapon resulting in the death of the victim is a serious crime of violence and merits the punishment imposed by the OCCA. Petitioner has the availability of parole, even though he must serve 85% of his sentence before he is eligible for parole. *See Hawkins*, 200 F.3d at 1284 (availability of parole is relevant but not

21

determinative to whether the length of the sentence violates the Eighth Amendment). In light of Supreme Court precedent and the fact that Petitioner's sentence is within the statutory range of punishment established by Oklahoma law, Petitioner's sentence is not grossly disproportionate to the crime he committed. *Compare Hamelin v. Michigan*, 501 U.S. 957, 994 (1991) (holding that a sentence of life without parole is not disproportionate to a first-time offender's conviction of possession of cocaine). Petitioner fails to present the extraordinary case needed to establish a violation of his Eighth Amendment rights. Therefore, the claim raised in Ground Four should be denied.

## RECOMMENDATION

Based upon the foregoing analysis, it is recommended that the petition for a writ of habeas corpus be denied. Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by May 3rd , 2010, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 12th day of April, 2010.

BANA ROBERTS
**UNITED STATES MAGISTRATE JUDGE**.

22